# UNITED STATES DISTRICT COURT
## DISTRICT OF MAINE

| | |
|---|---|
| NEW HAMPSHIRE MOTOR TRANSPORT ASSOCIATION, MASSACHUSETTS MOTOR TRANSPORTATION ASSOCIATION, INC., AND VERMONT TRUCK & BUS ASSOCIATION, INC., <br><br>        Plaintiffs, <br><br>    -v- <br><br> G. STEVEN ROWE, in his official capacity as Attorney General of the State of Maine, <br><br>        Defendant. | Case No.  1:03-cv-178-DBH |

**PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT
WITH INCORPORATED MEMORANDUM OF LAW**

**INJUNCTIVE RELIEF SOUGHT**

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ...............................................................................iii

LEGISLATIVE MATERIALS .......................................................................... v

MOTION.............................................................................................................. 1

PRELIMINARY STATEMENT ........................................................................ 2

NATURE OF THE CASE ................................................................................... 3

    A.    The Challenged Provisions. ................................................................ 3

        1.    Section 1555-D. ................................................................... 3

        2.    Sections 1555-(C)(3)(A) and (C). ....................................... 4

        3.    Penalties For Violating The Challenged Provisions. ............... 5

    B.    Statement Of Undisputed Facts. ......................................................... 5

        1.    The Parties. .......................................................................... 5

        2.    The State's Intent To Enforce The Challenged Provisions. ....................... 6

ARGUMENT ...................................................................................................... 6

I.    BY THEIR EXPRESS TERMS, THE CHALLENGED PROVISIONS ARE "RELATED TO A . . . SERVICE OF ANY MOTOR CARRIER . . . WITH RESPECT TO THE TRANSPORTATION OF PROPERTY" AND THEREFORE ARE PREEMPTED BY THE FAAAA. ................................. 6

    A.    Congress Intended The FAAAA Broadly To Preempt State Laws Related To Carriers' Transportation Services. ................................... 7

        1.    Congress Intended The FAAAA To Eliminate A Patchwork Of State Laws, Specifically Including Laws Regulating "Types Of Commodities Carried." ....................... 7

        2.    Congress Adopted "The Broad Preemption Interpretation" Of *Morales v. Trans World Airlines* For The FAAAA. ................. 9

        3.    The First Circuit Has Recognized The Broad Scope Of FAAAA Preemption. ........................................................................ 9

    B.    By Their Express Terms, The Challenged Provisions Are Related To A "Service Of Any Motor Carrier . . . With Respect To The Transportation Of Property." ....................................................... 10

        1.    Section 1555-D Is Related To Carriers' Service. .................. 11

            a.    Section 1555-D Expressly Refers To Carriers' Service. ............. 11

            b.    Section 1555-D Also Has A Forbidden Significant Effect On Carriers' Service. ......................... 12

        2.    Sections 1555-C(3)(A) and (C) Are Related To Carriers' Service. ......... 13

            a.    Sections 1555-C(3)(A) and (C) Expressly Refer To Carriers' Service. ....................... 13

            b.    Sections 1555-C(3)(A) And (C) Also Have A Forbidden Significant Effect On Carriers' Service. ....................... 14

# TABLE OF CONTENTS
(continued)

**Page**

II. PLAINTIFFS SHOULD BE AWARDED SUMMARY JUDGMENT ON THEIR CLAIM FOR DECLARATORY RELIEF.................................................................... 15

III. PLAINTIFFS SHOULD BE AWARDED SUMMARY JUDGMENT AND A PERMANENT INJUNCTION ON THEIR CLAIM UNDER THE SUPREMACY CLAUSE. ......................................................................................................... 15

    A. The Threat Of Enforcement Of The Challenged Provisions Constitutes Irreparable Harm. .............................................................................. 15

    B. The Constitutional Violation Is An Additional Factor Reinforcing The Existence Of Irreparable Harm. .......................................................... 15

CONCLUSION.................................................................................................... 15

sf- 1560304

# TABLE OF AUTHORITIES

## CASES

*Abbott Labs. v. Gardner,*
387 U.S. 136 (1967)...........................................................................................17

*Am. Airlines v. Wolens,*
513 U.S. 219 (1995) ....................................................................................10 n.9

*Amoco Prod. Co. v. Vill. of Gambell,*
480 U.S. 531 (1987)...................................................................................16 n.12

*Deerskin Trading Post, Inc. v. United Parcel Serv. of Am., Inc.,*
972 F. Supp. 665 (N.D. Ga. 1997) ..............................................................7 n.5

*Elrod v. Burns,*
427 U.S. 347 (1976).........................................................................................18

*Ex parte Young,*
209 U.S. 123 (1908).........................................................................................18

*Fed. Express Corp. v. Cal. P.U.C.,*
No. C-87-4891 MHP,
1993 U.S. Dist. LEXIS 13830 (N.D. Cal. Sept. 23, 1993) .................................16

*Hunt v. Wash. State Apple Adver. Comm'n,*
432 U.S. 333 (1977)........................................................................................5 n.4

*Kelley v. United States,*
69 F.3d 1503 (10th Cir. 1995) ............................................................................7

*Lainer v. City of Boston,*
95 F. Supp. 2d 17 (D. Mass 2000) ....................................................................18

*Morales v. Trans World Airlines, Inc.,*
504 U.S. 374 (1992).................................................................................. *passim*

*Soly v. United Parcel Serv., Inc.,*
No. 02-CV-10499-MEL,
2002 U.S. Dist. LEXIS 24059 (D. Mass. Aug. 22, 2002)............................11 n.10

*Steffel v. Thompson,*
415 U.S. 452 (1974)....................................................................................15 n.11

*Tocher v. City of Santa Ana,*
219 F.3d 1040 (9th Cir. 2000),
*cert. denied,* 531 U.S. 1146 (2001)...................................................................15

*Trans World Airlines, Inc. v. Mattox,*
897 F.2d 773 (5th Cir. 1990) ...........................................................................18

*United Parcel Serv., Inc. v. Flores-Galarza ("Flores-Galarza I"),*
210 F. Supp. 2d 33 (D.P.R. 2002),
*aff'd,* 318 F.3d 323 (1st Cir. 2003) ........................................................12, 14, 18

*United Parcel Serv., Inc. v. Flores-Galarza (Flores-Galarza II)*,
   318 F.3d 323 (1st Cir. 2003) .......................................................................... *passim*

## FEDERAL STATUTES AND RULES

28 U.S.C.
   § 2201 ...............................................................................................................1, 15
   § 2201(a) ...............................................................................................................15
   § 2202 .....................................................................................................................1

49 U.S.C.
   § 13102(21)(B) ...............................................................................................11 n.10
   § 14501(c)(1) .................................................................................... 2, 7 & n.5, 15
   § 14501(c)(2)(A) ..................................................................................................8 n.6
   § 14501(c)(2)(B)-(C) ...........................................................................................8 n.6
   § 41713(b)(4) .....................................................................................................10 n.8
   § 41713(b)(4)(A) ............................................................................................. 7 & n.5
   § 41713(b)(4)(B)(i) .............................................................................................8 n.6

Fed. Aviation Admin. Authorization Act of 1994,
   Pub. L. No. 103-305, Title VI, § 601, 108 Stat. 1569 .......................................1, 8

Fed. R. Civ. P.
   56.............................................................................................................................1
   56(a)........................................................................................................................1

D. Me. L. R. 56 ...........................................................................................................1

## MAINE STATUTES

2003 Me. Pub. Laws 444 ............................................................................................3

5 M.R.S.A. § 205-A, *et seq.* .......................................................................................5

22 M.R.S.A.
   § 1551(1-B) .....................................................................................................4, 13
   § 1551(1-C) ...........................................................................................................4
   § 1551(3) ...........................................................................................................3 n.3
   § 1555-C ...............................................................................................................4
   § 1555-C(3)(A) .............................................................................................. *passim*
   § 1555-C(3)(C).............................................................................................. *passim*
   § 1555-C(8) ...........................................................................................................5
   § 1555-D .................................................................................................... *passim*
   § 1555-D(1).................................................................................................4, 11, 12
   § 1555-D(2)...........................................................................................................5
   § 1555-D(3)...........................................................................................................5

## NEW YORK STATUTES

N.Y. Pub. Health Law § 1399-ll ..........................................................................10 n.9

## LEGISLATIVE MATERIALS

H. R. Conf. Rep. No. 103-677 (1994),
*reprinted in* 1994 U.S.C.A.N.N. 1715 ..................................................... 7, 8, 9 & n.8, 10 n.9

H.R. 2422, 80th Leg., Reg. Sess. (Kan. 2003) ..................................................................10 n.9

S. 67, 183d Gen. Ct., Reg. Sess. (Mass. 2003) ..................................................................10 n.9

## OTHER AUTHORITIES

U.S. Const. art. VI, cl. 2 ..................................................................................................................1

# MOTION

NOW COME plaintiffs, the New Hampshire Motor Transport Association, the Massachusetts Motor Transportation Association, Inc. and the Vermont Truck & Bus Association, Inc. (collectively the "Carrier Associations" or the "Associations") pursuant to Federal Rule of Civil Procedure 56 and Local Rule 56 and move this Court to enter judgment as a matter of law in their favor on Count One of the Complaint, under the Supremacy Clause of the Constitution, U.S. Const. art. VI, cl. 2, and Count Two, under 28 U.S.C. §§ 2201 and 2202 of the Declaratory Judgment Act.  The Motion is based on the ground that, by their express terms, 22 M.R.S.A. § 1555-C(3)(A) ("Section 1555-C(3)(A)"), 22 M.R.S.A. § 1555-C(3)(C) ("Section 1555-C(3)(C)"), and 22 M.R.S.A. § 1555-D ("Section 1555-D") (collectively the "Challenged Provisions"), are preempted by the Federal Aviation Administration Authorization Act of 1994 ("FAAAA") under the Supremacy Clause.  In support of this Motion, the Associations submit the following memorandum of law incorporated herein, the Statement of Material Facts Not in Dispute ("SMF"), and the Declarations of Alice Ennis, Anne Lynch, and Robert J. Sculley, all of which are attached hereto.

Because this motion for summary judgment presents pure issues of law that can be decided without the need for discovery or submission of evidence concerning the effect of the Challenged Provisions on carriers, and because the Challenged Provisions took effect on September 13, 2003 and time is therefore of the essence, the Associations have herewith filed a motion for relief from Federal Rule of Civil Procedure 56(a), which otherwise would require them to wait until October 30 to file their motion for summary judgment.[1]

---

[1] In the interest of reaching an efficient resolution of their action, the Carrier Associations are moving for summary judgment based solely on the ground that the express terms of the Challenged Provisions in and of themselves — without reference to testimony or evidence concerning the actual effect on carriers of complying with the Challenged Provisions — establish that they are related to carriers' service, and therefore are preempted by the FAAAA as a matter of law.  In the event that this motion is denied, the Associations reserve their right to establish by testimony and evidence that the Challenged Provisions are related not only to carriers' services, but also to their routes and prices, and are therefore preempted by the FAAAA on each of those independent bases.

1

## PRELIMINARY STATEMENT

To foster the efficient transportation of property that is vital to the American economy, Congress has prohibited states from enacting or enforcing any law "related to a . . . service of any motor carrier . . . with respect to the transportation of property." 49 U.S.C. § 14501(c)(1). In contravention of Congress's mandate, Maine has enacted a statute that expressly seeks to "Regulate the Delivery . . . of Tobacco Products" in the State. The Challenged Provisions explicitly regulate deliveries in two ways. First, Section 1555-D addresses the "Illegal Delivery of Tobacco Products." It prohibits any person from "knowingly transport[ing] or caus[ing] to be delivered to a person in this state [other than a licensed tobacco distributor or retailer] a Tobacco Product" that was not purchased from a tobacco retailer licensed by the State. Second, Sections 1555-C(3)(A) and (C) dictate the manner in which any "Delivery Service" — specifically defined to include a person engaged in the commercial delivery of packages — must provide service in order to be lawfully utilized to deliver tobacco products in Maine. For example, a carrier must make delivery only to the purchaser (as opposed to a mail room attendant, receptionist, or any other person at the delivery address) and must check a government-issued photo identity card of any addressee under 27 years old.

*The Challenged Provisions expressly regulate whether, to whom, and how carriers may deliver a particular commodity in Maine.* They are, therefore, state laws "related to a . . . service of any motor carrier . . . with respect to the transportation of property" and are preempted.

Recent controlling authority from the United States Court of Appeals for the First Circuit, *United Parcel Service, Inc. v. Flores-Galarza* (*Flores-Galarza II*), 318 F.3d 323 (1st Cir. 2003), establishes that the FAAAA preempts the Challenged Provisions as a matter of law. In *Flores-Galarza II*, the First Circuit held that a Puerto Rico statute that "forbids delivery unless and until a recipient produces a certificate from the Secretary [of the Treasury]" was related to a carrier's service and therefore was preempted by the FAAAA. 318 F.3d at 335-36. The court also held that the FAAAA preempted Puerto Rico's alternative "prepayment mechanism" that allowed carriers to prepay excise taxes owed by recipients of deliveries, because it "imposes extensive requirements that must be met before a carrier may make a lawful delivery." *Id*. at 336.

2

Like the Puerto Rico statute that forbid deliveries, Section 1555-D expressly prohibits certain deliveries.  And like the Puerto Rico prepayment mechanism, Sections 1555-C(3)(A) and (C) impose requirements that carriers must satisfy in order to make certain deliveries.  Accordingly, just as the First Circuit held in *Flores-Galarza II* that the Puerto Rico statutory scheme was preempted, the Challenged Provisions are preempted as a matter of law.

**NATURE OF THE CASE**

**A.     The Challenged Provisions.**

The Challenged Provisions were enacted by 2003 Public Laws 444, "An Act To Regulate the Delivery and Sales of Tobacco Products and To Prevent the Sale of Tobacco Products to Minors" (the "Statute"), which became effective on September 13, 2003.[2]

**1.     Section 1555-D.**

Section 1555-D expressly regulates the "Illegal Delivery of Tobacco Products."[3]  22 M.R.S.A. § 1555-D.  It provides:

> A person *may not knowingly transport or cause to be delivered* to a person in this state a Tobacco Product purchased from a person who is not licensed as a tobacco retailer in this state, except that this provision does not apply to the transportation or delivery of Tobacco Products to a licensed tobacco distributor or tobacco retailer.

*Id*. (emphasis added).  In addition, Section 1555-D provides that a person is "deemed to know that a package contains a tobacco product" if it is marked in accordance with Section 1555-C, or "if the person receives the package from a person listed as an unlicensed tobacco retailer by the Attorney General under this Section."  *Id*.  The Statute requires the Attorney General to maintain

---

[2] Other than the Challenged Provisions, the Carrier Associations do not challenge the Statute.  (*See* Compl. ¶ 22.)  The unchallenged provisions of the Statute regulate purchasers and retailers of tobacco product delivery sales in a manner that does not relate to the carriers' prices, routes, or services.

[3] Under pre-existing Maine law, the term "tobacco products" "includes any form of tobacco and any material or device used in the smoking, chewing or other form of tobacco consumption, including cigarette papers and pipes."  22 M.R.S.A. § 1551(3).

lists of licensed tobacco retailers and known unlicensed retailers and to provide those lists "to a delivery service."  22 M.R.S.A. § 1555-D(1).

### 2.      Sections 1555-(C)(3)(A) and (C).

Section 1555-C expressly regulates "Delivery Sales Of Tobacco Products."  22 M.R.S.A. § 1555-C.  The Statute defines "Delivery Sale" as "a sale of tobacco products to a consumer in this state when . . . the tobacco products are *delivered by use of a delivery service*."  22 M.R.S.A. § 1551(1-B) (emphasis added).  The Statute defines the term "Delivery Service" to include "a person . . . who is engaged in the commercial delivery of letters, packages or other containers." 22 M.R.S.A. § 1551(1-C).  The Carrier Associations' members are engaged in the commercial delivery of packages containing property (*see* SMF ¶ 3), and therefore are "Delivery Services" within the meaning of the Challenged Provisions.

Section 1555-C(3) imposes specific requirements on the "shipping" of any "Delivery Sale" of tobacco products (i.e., any sale of tobacco products when delivered by a delivery service), including the following:

> (3)     **Requirements For Shipping A Delivery Sale**.  The following provisions apply to a tobacco retailer shipping Tobacco Products pursuant to a Delivery Sale.
>
> (A)   Prior to shipping, the tobacco retailer shall provide to the Delivery Service the age of the purchaser . . .
>
> . . . .
>
> (C)   The tobacco retailer shall utilize a Delivery Service that imposes the following requirements:
>
>> (1)   the purchaser must be the addressee;
>>
>> (2)   the addressee must be of legal age to purchase tobacco products and must sign for the package; and
>>
>> (3)   if the addressee is under 27 years of age, the addressee must show valid government-issued identification that contains a photograph of the addressee and indicates that the addressee is of legal age to purchase tobacco products.

22 M.R.S.A. § 1555-C(3)(A) & (C).

4

### 3. Penalties For Violating The Challenged Provisions.

Any person who violates Section 1555-D, and the person's employer, is subject to a fine of not more than $1500. *See* 22 M.R.S.A. § 1555-D(2). In addition, a violation of the Challenged Provisions is considered a violation of the Maine Unfair Trade Practices Act, 5 M.R.S.A. § 205-A, *et seq. See* 22 M.R.S.A. §§ 1555-C(8), 1555-D(3). The Attorney General is empowered to bring a court action to enforce the Challenged Provisions and to seek injunctive relief, fines, penalties and equitable relief for any violation. *See id*.

### B. Statement Of Undisputed Facts.

The Carrier Associations' motion seeks summary judgment on the ground that the Challenged Provisions are preempted by the FAAAA based on their express terms. As such, the motion does not turn on any disputed facts.

### 1. The Parties.

The plaintiff Carrier Associations are trade associations that represent the trucking industry. (SMF ¶ 1.) It is the business of the Associations' carrier members to transport and deliver packages containing property, including in some instances tobacco products, to recipients in various states, including Maine. (*Id.* ¶ 2.) Through this action, the Carrier Associations seek to protect interests that are central to the their purposes of representing, and advocating on behalf of, the trucking industry. (*Id.* ¶ 3.)[4]

Defendant G. Steven Rowe is sued in his official capacity as the Attorney General of the State of Maine. Under 22 M.R.S.A. §1555-C(8), and 22 M.R.S.A. § 1555-D(3), the Attorney General is responsible for enforcement of the Challenged Provisions by seeking injunctive relief, fines, penalties, and equitable relief.

---

[4] In addition, the Carrier Associations' members would have standing to sue in their own right, and neither the claims asserted nor the prospective relief requested requires the participation of individual carrier members in the lawsuit. The Carrier Associations, therefore, have standing to bring this lawsuit on behalf of their members. *See Hunt v. Wash. State Apple Adver. Comm'n*, 432 U.S. 333, 343 (1977).

sf-1560304

### 2.   The State's Intent To Enforce The Challenged Provisions.

On August 28, 2003, John Archard, Tobacco Enforcement Coordinator of the State of Maine Office of the Attorney General, sent a letter addressed "Dear Delivery Service" to various carriers doing business in Maine, including members of the Carrier Associations.  (*See* SMF ¶ 4, Lynch Decl. ¶ 6 & Ex. A.)  Mr. Archard's letter informs carriers that "Maine has enacted a new law that affects delivery of tobacco products" and "regulates delivery sales of tobacco products" to consumers in Maine.  (*Id*.)  The letter explains that:  "Delivery services are prohibited from delivering tobacco products to consumers in Maine unless purchased and shipped from a licensed tobacco retailer."  (*Id*.)  It further informs carriers that they "must only accept shipments from retailers licensed by the Maine Department of Human Services," and encloses "a list of known unlicensed and licensed tobacco retailers."  (*Id*.)  The letter notes that "[i]llegal delivery of tobacco products is a civil violation," subject to fines, and that under the Maine Unfair Trade Practice Act, the State may "obtain a court order enjoining a delivery service from delivering tobacco products to Maine consumers."  (*Id*.)  Finally, the letter states:  "We expect full compliance with this law."  (*Id*.)

## ARGUMENT

### I.   BY THEIR EXPRESS TERMS, THE CHALLENGED PROVISIONS ARE "RELATED TO A . . . SERVICE OF ANY MOTOR CARRIER . . . WITH RESPECT TO THE TRANSPORTATION OF PROPERTY" AND THEREFORE ARE PREEMPTED BY THE FAAAA.

To achieve national uniformity in the interstate transportation of property, Congress has mandated that carriers be subject exclusively to uniform federal laws regarding their prices, routes, and services.  Specifically, through the FAAAA, Congress has provided that:

> [A] State, political subdivision of a State, or political authority of 2 or more States *may not enact or enforce a law*, regulation, or other provision having the force and effect of law *related to a* price, route, or *service of any motor carrier . . . with respect to the transportation of property*.

sf-1560304

49 U.S.C. § 14501(c)(1) (emphasis added); *see* 49 U.S.C. § 41713(b)(4)(A) (using same preemptive language with respect to air and intermodal air/ground carriers).[5]

In blatant disregard of the congressional mandate of uniformity for interstate and intrastate cargo transportation, the Challenged Provisions regulate the service of carriers who transport and deliver property to persons in the State of Maine.  Section 1555-D explicitly regulates from whom and to whom carriers may make a delivery of tobacco products in Maine.  Sections 1555-C(3)(A) and (C) explicitly regulate the manner in which "Delivery Services" must provide their services in order to be utilized for shipping tobacco products sold to consumers in Maine.  By their express terms, each of the Challenged Provisions is a law "related to a . . . service of any motor carrier . . . with respect to the transportation of property" and therefore is preempted as a matter of law.

A.    **Congress Intended The FAAAA Broadly To Preempt State Laws Related To Carriers' Transportation Services.**

1.    **Congress Intended The FAAAA To Eliminate A Patchwork Of State Laws, Specifically Including Laws Regulating "Types Of Commodities Carried."**

At the time the FAAAA was enacted, 41 states "regulate[d], in varying degrees, intrastate prices, routes, and services of motor carriers."  H.R. Conf. Rep. No. 103-677, at 86 (1994), *reprinted in* 1994 U.S.C.C.A.N. 1715, 1758.  As noted in the House Conference Report, the "[t]ypical forms of regulation" included restrictions on the "*types of commodities carried.*"  *Id.* (emphasis added).

The FAAAA's preemption provisions were designed to eliminate the "patchwork of regulation" that state law had imposed on motor and intermodal air/motor cargo carriers.  *Id.* at 87, *reprinted in* 1994 U.S.C.C.A.N. at 1759; *see Kelley v. United States*, 69 F.3d 1503, 1508

---

[5] Although this Motion generally discusses the motor carrier preemption provision of the FAAAA, 49 U.S.C. § 14501(c)(1), the air and intermodal air/ground carrier provision, 49 U.S.C. 41713(b)(4)(A), also applies to those of the Carrier Associations' members that are motor carriers affiliated with air carriers through common controlling interest.  *See, e.g.*, *Deerskin Trading Post, Inc. v. United Parcel Serv. of Am., Inc.*, 972 F. Supp. 665, 668 (N.D. Ga. 1997) (applying both FAAAA provisions to UPS).

(10th Cir. 1995) (FAAAA preemption "clearly serves to eliminate the 'patchwork' of varying state regulations that concerned Congress").  Section 601 of the FAAAA, titled "Preemption of Intrastate Transportation of Property," includes Congress's express findings that state regulation of motor cargo carriers had "imposed an unreasonable burden on interstate commerce [and] impeded the free flow of trade, traffic, and transportation of interstate commerce."  FAAAA, Pub. L. No. 103-305, tit. VI, § 601(a)(1), 108 Stat. 1569, 1605 (1994); *see also* H.R. Conf. Rep. No. 103-677, at 87 (state regulation had caused "significant inefficiencies, increased costs, reduction of competition, inhibition of innovation and technology and curtail[ed] the expansion of markets"), *reprinted in* 1994 U.S.C.C.A.N. at 1759.

As explained by the House Conference Committee Report, FAAAA preemption was "necessary to facilitate interstate commerce" because:

> State economic regulation of motor carrier operations causes significant inefficiencies, increased costs, reduction of competition, inhibition of innovation and technology and curtails the expansion of markets. . . . *The sheer diversity of these regulatory schemes is a huge problem for national and regional carriers attempting to conduct a standard way of doing business.*

*Id.* (emphasis added).  Through the FAAAA's preemption of state laws, Congress intended that carriers' "[s]ervice options will be dictated by the marketplace; and not by an artificial regulatory structure."  *Id.* at 88, *reprinted in* 1994 U.S.C.C.A.N. at 1760.

Thus, through the FAAAA, Congress intended to eliminate state regulation of carriers — specifically including restrictions on "*types of commodities carried.*"  *Id.* at 86 (emphasis added), *reprinted in* 1994 U.S.C.C.A.N. at 1758.[6]

-------------------

[6] Congress included in each preemption provision of the FAAAA a subsection entitled "Matters Not Covered," which preserves "the safety regulatory authority of a State with respect to motor vehicles"; state authority to "impose highway route controls or limitations based on the size or weight of the motor vehicle or the hazardous nature of the cargo"; and state authority "to regulate motor carriers with regard to minimum amounts of financial responsibility relating to insurance requirements."  49 U.S.C. §§ 14501(c)(2)(A), 41713(b)(4)(B)(i).  No such preserved authority is at issue here.  Congress also preserved state authority to regulate household goods carriers (i.e., moving companies) and the price of non-consensual tow truck transportation, which also are not at issue here.  *See* 49 U.S.C. §§ 14501(c)(2)(B)-(C), 41713(b)(4)(B)(i).

### 2. Congress Adopted "The Broad Preemption Interpretation" Of *Morales v. Trans World Airlines* For The FAAAA.

To accomplish its goal of eliminating a patchwork of state regulation, Congress expressly adopted "*the broad preemption interpretation* adopted by the United States Supreme Court" in *Morales v. Trans World Airlines, Inc.*, 504 U.S. 374 (1992). H.R. Conf. Rep. No. 103-677, at 83 (emphasis added), *reprinted in* 1994 U.S.C.C.A.N. at 1755. *Morales* interpreted the Airline Deregulation Act ("ADA"), which had used virtually identical preemptive language with respect to air carriers. 504 U.S. at 383. The *Morales* Court concluded that "[t]he ordinary meaning of ['relating to'] is a broad one — 'to stand in some relation; to have bearing or concern; to pertain; refer; to bring into association with or connection with,' — and the words thus express a broad pre-emptive purpose." *Id.* (citation omitted). Based on that ordinary meaning, as well as cases interpreting the "relates to" language of the ERISA preemption provision, the Court held that "State enforcement actions *having a connection with, or reference to*, airline 'rates, routes, or services' are pre-empted" by the ADA. *Id.* at 384 (emphasis added). *Morales* held that a state law is preempted if it either: (1) makes "express reference" to carriers' price, route, or service, or (2) has a "forbidden significant effect" on price, route, or service. *Id.* at 388.[7]

### 3. The First Circuit Has Recognized The Broad Scope Of FAAAA Preemption.

Applying *Morales*, the First Circuit has held that the FAAAA has a "broad reach," such that "[s]tate laws and regulations 'having a connection with or reference to' an air carrier's prices, routes or services are preempted." *Flores-Galarza II*, 318 F.3d at 335.[8] As the court

---

[7] The *Morales* Court clarified that states remain free to enforce laws that have only a tangential connection to price, route, or service. The Court noted that its broad interpretation of preemption would not lead to preemption of "state laws against gambling and prostitution as applied to airlines" because "'some state actions may affect [airline fares] in too tenuous, remote, or peripheral a manner' to have pre-emptive effect." *Morales*, 504 U.S. at 390 (citation omitted).

[8] *Flores-Galarza* applied the air and intermodal preemption provision of the FAAAA, 49 U.S.C. § 41713(b)(4), which is functionally identical to the FAAAA's motor carrier preemption provision on which the Carrier Associations primarily rely. *See* H.R. Conf. Rep. No. 103-677, at 85 (FAAAA's two preemption provisions "intended to function in the exact same manner with respect to . . . preemptive effect"), *reprinted in* 1994 U.S.C.A.N.N. at 1757.

9

held:  "A sufficient nexus exists if the law expressly references the air carrier's prices, routes or services, or has a 'forbidden significant effect' upon the same."  *Id.* (citation omitted).

In *Flores-Galarza II*, the First Circuit held that the FAAAA preempted a Puerto Rico "statutory regime that prohibits an interstate air carrier from delivering any package unless the carrier first provides proof that the package's addressee has paid the appropriate excise tax, or the carrier prepays the amount of the tax on the addressee's behalf."  *Id.* at 325.  The court held that "[t]he challenged scheme both refers to and has a forbidden significant effect on [the plaintiff carrier's] prices, routes or services.  *Id.* at 335.

**B.     By Their Express Terms, The Challenged Provisions Are Related To A "Service Of Any Motor Carrier . . . With Respect To The Transportation Of Property."**

There is no question that the Challenged Provisions have a connection with or reference to carriers' services.  Indeed, the Office of the Attorney General itself has informed carriers that the new law "affects delivery of tobacco products" and "regulates delivery sales of tobacco products in the state."  (SMF ¶ 4, Lynch Decl. ¶ 6 & Ex. A.)  Because the Challenged Provisions explicitly regulate whether, to whom, and how carriers are permitted to deliver certain goods to recipients in Maine, they are preempted as a matter of law.[9]

---

[9] In addition to the Challenged Provisions enacted in Maine, other states have enacted or are considering differing and disparate restrictions on the transportation and delivery of tobacco products.  *See, e.g.*, N.Y. Pub. Health Law § 1399-ll; S. 67, 183d Gen. Ct., Reg. Sess. (Mass. 2003); H.R. 2422, 80th Leg., Reg. Sess. (Kan. 2003).  If carriers were subject to these various and inconsistent laws, they once again would have to consult and comply with a patchwork of state and local laws and face the attendant inefficiencies and impediments to the seamless nationwide transportation of property that Congress expressly intended to eliminate through the FAAAA.  *See* H.R. Conf. Rep. No. 103-677, at 87, *reprinted in* 1994 U.S.C.C.A.N. at 1759; *see also Am. Airlines, Inc. v. Wolens*, 513 U.S. 219, 229 n.5 (1995) (ADA preempts states from "seek[ing] to impose their own public policies" on carriers' operations).  For example, certain packages containing pipe tobacco that lawfully could be delivered to a consumer in New York could not be delivered to a consumer in Maine.  Likewise, carriers could deliver packages containing cigarettes to authorized recipients in New York and Kansas, but the carrier would have to stop at each state's borders to determine which addressees are authorized recipients.  The resulting inefficiencies are precisely what the FAAAA was intended to eliminate.

Two different challenges are pending to the delivery restrictions in the New York statute, N.Y. Public Health Law § 1399-ll.  *See Ward v. New York*, W.D.N.Y., No. 03-CV-485S (discovery currently scheduled to be completed by October 27, 2003); *New York State Motor*

(Footnote continues on following page.)

1.     **Section 1555-D Is Related To Carriers' Service.**

a.     **Section 1555-D Expressly Refers To Carriers' Service.**

By its express terms, Section 1555-D defines and proscribes the "Illegal Delivery of Tobacco Products." 22 M.R.S.A. § 1555-D. Section 1555-D makes it unlawful for a person to "knowingly transport or cause to be delivered to a person in this state a Tobacco Product purchased from a person who is not licensed as a tobacco retailer in this state" (except for licensed tobacco distributors and retailers).[10] *Id.* There is no doubt that the ban on illegal deliveries applies to carriers: Section 1555-D(1) requires the Attorney General to provide lists of licensed and known unlicensed tobacco retailers to "a delivery service." 22 M.R.S.A. 1555-D(1).

This explicit prohibition against "Illegal Delivery of Tobacco Products" satisfies the "express reference" test for preemption set forth in *Morales*, 504 U.S. at 388, and *Flores-Galarza II*, 318 F.3d at 335. The district court's and First Circuit's decisions in *Flores-Galarza* are directly on point. Like the Challenged Provisions here, one aspect of the statutory scheme held preempted in Puerto Rico made certain deliveries unlawful. The First Circuit specifically held that the Puerto Rico statute that "forbids delivery" of packages to unauthorized recipients was preempted because it "both refers to and has a forbidden significant effect on UPS's prices, routes or services." *Flores-Galarza II*, 318 F.3d at 335-36. As the district court explained:

---

(Footnote continued from previous page)

*Truck Ass'n, et al. v. Pataki, et al.,* S.D.N.Y., No. 03 Civ. 2386 (GBD) (plaintiffs' motion for summary judgment argued on July 22, 2003).

    [10] As *Flores-Galarza* holds, a carrier's delivery of the property it transports is a core part of the carrier's service within the meaning of the FAAAA. *Flores-Galarza*, 318 F.3d at 335-36 (holding FAAAA preempts statute that "forbids delivery" because "[c]ompliance with this provision significantly affects the timeliness and effectiveness of UPS's *service, which includes the delivery of packages* on an express or time-guaranteed basis" (emphasis added)). *See also Soly v. United Parcel Serv., Inc.*, No. 02-CV-10499-MEL, 2002 U.S. Dist. LEXIS 24059, at *1-2, 3 (D. Mass. Aug. 22, 2002) (claims arising from delivery of packages "do not merely 'relate to' UPS services, they arise directly from core services provided by UPS, going to 'the heart of the "services" that UPS provides'" (citation omitted)); 49 U.S.C. § 13102(21)(B) ("transportation" includes "services related to [the movement of passengers or property], including . . . receipt, [and] delivery").

sf-1560304

> The scheme makes "express reference" to carriers' service.  It expressly prohibits carriers from making deliveries to consignees who do not have a certificate from the defendant authorizing the delivery. . . .  Therefore, under the first *Morales* test, they, and their enforcement mechanisms, are preempted by the FAAAA.

*United Parcel Serv., Inc. v. Flores-Galarza* ("*Flores-Galarza I*"), 210 F. Supp. 2d 33, 43 (D.P.R. 2002) (citations omitted), *aff'd,* 318 F.3d 323 (1st Cir. 2003).

Here, as in *Flores-Galarza*, Section 1555-D expressly refers to carriers' services by prescribing to whom carriers may make certain deliveries.  Here, too, that express reference renders Section 1555-D preempted as a matter of law.

### b.    Section 1555-D Also Has A Forbidden Significant Effect On Carriers' Service.

By its plain terms, Section 1555-D also satisfies the alternative preemption test of having a "forbidden significant effect" on carriers' services.  *Morales*, 504 U.S. at 388; *Flores-Galarza II*, 318 F.3d at 335.

To avoid violating Section 1555-D, carriers must not knowingly deliver any package containing tobacco products to a consumer in Maine, unless shipped by a licensed retailer.  *See* 22 M.R.S.A. § 1555-D.  This prohibition against certain deliveries necessarily has a significant effect on service.  *See Flores-Galarza I*, 210 F. Supp. 2d at 38 ("complying with the statutory ban on deliveries . . . has an obvious impact on UPS's delivery services").  In addition, because a carrier is deemed to know that a package contains tobacco products if it is marked in accordance with the Statute or is sent by a known unlicensed retailer on a list produced by the Attorney General (*see* 22 M.R.S.A. § 1555-D(1)), complying with the plain terms of Section 1555-D requires a carrier making deliveries in Maine:

- to determine whether the shipper of each package traveling to Maine is on the Attorney General's list of known unlicensed tobacco retailers; and
  - then, for any such package, either to prevent the package from being delivered, or
  - to deliver it only after consulting the Attorney General's list of licensed tobacco retailers and determining that the recipient is either a licensed retailer or a licensed distributor;
- to examine each package traveling to Maine to determine whether it is marked as containing tobacco products; and

- o then, for any such package, to consult the Attorney General's lists of licensed tobacco retailers and distributors to determine whether the shipper or addressee is licensed either as a tobacco retailer or a tobacco distributor in Maine; and

  - o if not, then to prevent the package from being delivered;

- to determine whether, even if not marked as containing tobacco products, the carrier knows that the package contains tobacco products; and

  - o then, for any such package, to consult the Attorney General's lists of licensed tobacco retailers and distributors to determine whether the shipper or addressee is licensed either as a tobacco retailer or a tobacco distributor in Maine; and

  - o if not, then to prevent the package from being delivered.

Because, by its express terms, Section 1555-D requires carriers to engage in these steps in order to provide transportation and delivery services in Maine, it necessarily has a significant effect on carriers' service and is preempted on that alternative basis.

### 2. Sections 1555-C(3)(A) and (C) Are Related To Carriers' Service.

#### a. Sections 1555-C(3)(A) and (C) Expressly Refer To Carriers' Service.

Section 1555-C(3)(C) expressly requires that "Delivery Sales" of tobacco products — i.e., sales "delivered by use of a delivery service" (22 M.R.S.A. § 1551(1-B)) — must be shipped via "a Delivery Service that imposes" specified "requirements." 22 M.R.S.A. § 1555-C(3)(C). For example, the delivery service must require that the purchaser of tobacco products be the addressee of the shipment and sign for the shipment, and that the Delivery Service must require any addressee under 27 years old to show proof of age. Section 1555-C(3)(A) expressly requires that "the tobacco retailer shall provide to the Delivery Service the age of the purchaser." 22 M.R.S.A. § 1555-C(3)(A).

Because they explicitly mandate that lawful shipments of tobacco products be shipped via "a Delivery Service that imposes" specified requirements, and dictate the manner in which "Delivery Services" must deliver tobacco products in order to be utilized to ship tobacco products into the State, Sections 1555-C(3)(A) and (C) relate to carriers' services and are preempted under the express reference test for preemption. *See Morales*, 504 U.S. at 388; *Flores-Galarza II*, 318 F.3d at 335.

13

Like Sections 1555-C(3)(A) and (C), one aspect of the statutory scheme held preempted in *Flores-Galarza* required carriers to take certain steps before they could make deliveries.  As the district court held, those provisions were preempted because:

> The prepayment mechanism of the scheme dictates the manner in which carriers handle, transport, and deliver packages — including requiring that they prepay excise taxes owed by consignees — in order to obtain the right to "take possession" of packages for delivery in Puerto Rico . . . .  *All of these provisions make express reference to carriers' service.*

*Flores-Galarza I*, 210 F. Supp. 2d at 43 (emphasis added).  Here, as in *Flores-Galarza*, the express reference to carriers' service renders Sections 1555-C(3)(A) and (C) preempted as a matter of law.

### b.    Sections 1555-C(3)(A) And (C) Also Have A Forbidden Significant Effect On Carriers' Service.

By their plain terms, Sections 1555-C(3)(A) and (C) also have a "forbidden significant effect" on carriers' service and are preempted on this additional basis.  *See Morales*, 504 U.S. at 388; *Flores-Galarza II*, 318 F.3d at 335.  Because Sections 1555-C(3)(A) and (C) mandate that carriers impose certain requirements in order to be used to ship tobacco products in Maine, to comply with their express terms, a carrier that seeks to lawfully be utilized to deliver packages containing tobacco products to an address in Maine must:

- receive information from the shipper as to the purchaser's age;
- require that Maine-bound packages containing tobacco products be addressed to the purchaser;
- require that such purchasers be of legal age to purchase tobacco products;
- require that addressees of such packages personally sign for the package; and
- where the purchaser is indicated to be age 18 through 26, require that the purchaser show a valid government-issued photo-identification indicating that the purchaser is at least 18 years old.

*See* 22 M.R.S.A. §§ 1555(C)(3)(A) & (C).

Because Sections 1555-C(3)(A) and (C) dictate the manner in which carriers are permitted to provide transportation and delivery services, they necessarily have a forbidden significant effect on service.  *See Flores-Galarza II*, 318 F.3d at 336 ("the prepayment mechanism imposes extensive requirements that must be met before a carrier may make a lawful

delivery," which imposed "a substantial burden on [the plaintiff carrier], in the form of additional labor, costs, and delays" and was preempted); *Tocher v. City of Santa Ana*, 219 F.3d 1040, 1047 (9th Cir. 2000) (municipal ordinances that imposed "operating requirements" that "directly influence the relationship between a customer and a [carrier]" preempted by FAAAA), *cert. denied*, 531 U.S. 1146 (2001).  By their express terms, Sections 1555-C(3)(A) and (C) therefore have a "forbidden significant effect" on service and satisfy the alternative *Morales* test for preemption.

## II.   PLAINTIFFS SHOULD BE AWARDED SUMMARY JUDGMENT ON THEIR CLAIM FOR DECLARATORY RELIEF.

Count Two of the Complaint seeks to have the Court resolve an actual controversy among the parties as to whether the Challenged Provisions are preempted by the FAAAA under the Supremacy Clause.  (Compl. ¶¶ 46-49.)  Because an actual controversy exists among the parties as to whether the Challenged Provisions are preempted, and because the Carrier Associations have established that the Challenged Provisions are preempted, they should be awarded the declaratory judgment they seek.

The Declaratory Judgment Act, 28 U.S.C. §§ 2201 *et seq*., empowers this Court to issue a declaratory judgment "[i]n a case of actual controversy within its jurisdiction . . . whether or not further relief is or could be sought."  28 U.S.C. § 2201(a).[11]  Here, the "actual controversy" requirement is plainly satisfied.  The FAAAA preempts not just the *enforcement* of provisions such as the Challenged Provisions, but the mere *enactment* of such a provision.  *See* 49 U.S.C. § 14501(c)(1) ("a State . . . may not *enact or enforce* a law . . .").  Thus, an actual controversy

---

[11] Although, as shown in Argument III, *infra*, the Carrier Associations' members will suffer irreparable harm if the Challenged Provisions are not enjoined, they need not make any showing of irreparable harm to support their request for a declaratory judgment.  *See, e.g., Steffel v. Thompson*, 415 U.S. 452, 471-72 (1974) ("the Court of Appeals was in error when it ruled that a failure to demonstrate irreparable injury — a traditional prerequisite to injunctive relief, having no equivalent in the law of declaratory judgments — precluded the granting of declaratory relief" (citations omitted)).

sf-1560304

exists about whether the Challenged Provisions are preempted based solely on the *enactment* of the law.  As one court ruled with respect to the ADA:

> The Deregulation Act forbids any State to "enact *or* enforce" any provision relating to airlines' rates, routes or services.  Phrased in the disjunctive, this prohibition is breached by the mere enactment of facially economic regulations.  A threat of enforcement, therefore, while a prerequisite for injunctive relief, is not necessary to trigger preemption.  *The mere existence of improper regulations implicates preemption.*

*Fed. Express Corp. v. Cal. P.U.C.*, No. C-87-4891 MHP, 1993 U.S. Dist. LEXIS 13830, at *13-14 (N.D. Cal. Sept. 23, 1993) (second emphasis added; citation omitted) (on remand from Ninth Circuit to determine which specific regulations should be declared preempted by ADA and enjoined).

Thus, here, there is an actual controversy warranting the issuance of declaratory relief.  Because, as shown above, the FAAAA preempts the Challenged Provisions based on their plain terms, judgment should be awarded to the Carrier Associations declaring that the Challenged Provisions are preempted by the FAAAA.

## III.   PLAINTIFFS SHOULD BE AWARDED SUMMARY JUDGMENT AND A PERMANENT INJUNCTION ON THEIR CLAIM UNDER THE SUPREMACY CLAUSE.

As shown in Argument I, above, the Challenged Provisions are preempted by the FAAAA.  As a result, the Carrier Associations have demonstrated that they succeed on the merits of Count One of the complaint under the Supremacy Clause.  For that reason, and because the Associations' members will be irreparably harmed if the Challenged Provisions are enforced, the Associations are entitled to summary judgment and a permanent injunction against enforcement of 22 M.R.S.A. §§ 1555-C(3)(A) and (C) altogether, and from enforcing 22 M.R.S.A. § 1555-D against motor carriers and air/ground intermodal carriers.[12]

---

[12] *See Amoco Prod. Co. v. Vill. of Gambell*, 480 U.S. 531, 546 n.12 (1987) (standard for a permanent injunction differs from standard for preliminary injunction because actual success on the merits must be demonstrated to obtain a permanent injunction).

16

A.     **The Threat Of Enforcement Of The Challenged Provisions Constitutes Irreparable Harm.**

The Challenged Provisions went into effect on September 13, 2003.  The State has notified delivery services of the new law and warned them that "[i]llegal delivery of tobacco products is a civil violation, punishable by a fine of up to $1500," and that the State may obtain a court order "enjoining a delivery service from delivering tobacco products to Maine consumers." (SMF ¶ 4, Lynch Decl. ¶ 6 & Ex. A.)

The threat that this preempted law will be enforced against the Carrier Associations' members is an irreparable harm that makes injunctive relief appropriate.  That was precisely the conclusion that the Supreme Court reached in analogous circumstances in *Morales*.  There, the specific issue was whether airlines were entitled to declaratory and injunctive relief against the use of state consumer protection laws to enforce National Association of Attorneys General guidelines concerning advertising of airline fares.  *See Morales*, 504 U.S. at 378.  In concluding that injunctive relief was appropriate, the Court relied on the fact that "the attorneys general of seven States . . . made clear that they would seek to enforce the challenged portions of the guidelines" and that the consumer protection statutes at issue authorized escalating civil penalties for violations.  *Id*. at 381.  As a result, the airlines challenging the guidelines "were faced with a Hobson's choice:  continually violate the . . . law and expose themselves to potentially huge liability; or violate the law once as a test case and suffer the injury of obeying the law during the pendency of the proceedings and any further review."  *Id.* (footnote omitted).  The Court concluded that the prospect of an imminent state suit to enforce the challenged law "supplies the necessary irreparable injury" for an injunction.  *Id*. at 382 (citing *Pub. Serv. Comm'n v. Wycoff Co.*, 344 U.S. 237, 240-41 (1952)).

Here, as in *Morales*, the threatened enforcement of the Challenged Provisions constitutes irreparable harm warranting injunctive relief.  Thus, *Morales* establishes that the threat of enforcement of the Challenged Provisions constitutes irreparable harm to the Carrier Associations' members that makes injunctive relief appropriate.  504 U.S. at 381-82; *see also Abbott Labs. v. Gardner*, 387 U.S. 136, 152-53 (1967) (pre-enforcement injunctive relief

17

appropriate where challenged laws force plaintiffs to choose between compliance with the law and "serious criminal and civil penalties"); *Ex parte Young*, 209 U.S. 123, 167 (1908) (injunction properly issued where "the injury complained of is the threatened commencement of suits, civil or criminal, to enforce the act").

## B. The Constitutional Violation Is An Additional Factor Reinforcing The Existence Of Irreparable Harm.

In addition to the imminent enforcement of the Challenged Provisions, their unconstitutionality itself reinforces the irreparable harm carriers face. *See Elrod v. Burns,* 427 U.S. 347, 373 (1976) (irreparable injury shown where "First Amendment interests were either threatened or in fact being impaired at the time relief was sought"); *see also Lainer v. City of Boston,* 95 F. Supp. 2d 17, 21 (D. Mass 2000) (continued enforcement of allegedly unconstitutional police department arrest policy posed risk of irreparable injury). Indeed, in granting summary judgment and a permanent injunction against enforcement of the preempted statutory scheme at issue in *Flores-Galarza*, the district court held that "the ongoing deprivation of UPS' constitutional rights which results from having to comply with the unlawful [statutory] scheme . . . is itself 'a factor in assessing irreparable injury.'" *Flores-Galarza I,* 210 F. Supp. 2d at 44;[13] *see also Trans World Airlines, Inc. v. Mattox,* 897 F.2d 773, 784 (5th Cir. 1990) (affirming preliminary injunction against enforcement of guidelines eventually held preempted in *Morales*, holding that their enforcement "would violate the Supremacy Clause, causing irreparable injury to the airlines").

## CONCLUSION

Congress has mandated that states not enact or enforce laws related to the services of motor carriers with respect to the transportation of property, including laws related to the types of commodities carried. The Challenged Provisions are precisely such laws and impermissibly

---

[13] The First Circuit's Opinion in *Flores-Galarza II*, 319 F.3d 323, affirmed the grant of summary judgment and permanent injunction in principal part (and remanded to the district court three peripheral issues regarding the scope of the injunction) without addressing irreparable harm.

sf-1560304

regulate whether, to whom, and how carriers may deliver tobacco products in Maine.  Because there are no material disputed facts and the Carrier Associations have demonstrated that the Challenged Provisions are preempted based on their express terms, judgment should be entered in their favor on Counts One (Supremacy Clause) and Two (Declaratory Relief).  The Challenged Provisions should be declared preempted by the FAAAA and defendant, his officers, agents, employees and any other persons acting on his behalf should be enjoined from enforcing 22 M.R.S.A. §§ 1555-C(3)(A) and (C) altogether, and from enforcing 22 M.R.S.A. § 1555-D against motor carriers and air/ground intermodal carriers.

Dated:    October 15, 2003

PAUL T. FRIEDMAN (certification pending)
RUTH N. BORENSTEIN (certification pending)
LAWRENCE R. KATZIN (certification pending)
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, CA  94105-2482
Telephone:  (415) 268-7000

MICHAEL A. NELSON
JENSEN BAIRD GARDNER & HENRY
10 Free Street
P.O. Box 4510
Portland, ME 04112-4510
Telephone: (207) 775-7271


By:  /s/
          Michael A. Nelson

Attorneys for Plaintiffs
NEW HAMPSHIRE MOTOR TRANSPORT
ASSOCIATION, MASSACHUSETTS MOTOR
TRANSPORTATION ASSOCIATION, INC., and
VERMONT TRUCK & BUS ASSOCIATION, INC.